Next case is Lewis v. Atlas Van Lines. Mr. West. Good afternoon, Your Honors. My name's Jim West. It's my privilege to speak on behalf of the Lewis's, the appellants in this case. I would like to reserve five minutes, if I may, as rebuttal. That request will be granted. Thank you, Your Honor. My clients, the Lewis's, had their dream retirement transmogrified into sort of a nightmare. When they attempted to arrange to have their furniture moved from their York, Pennsylvania home to their newly built New York home, they vetted the Atlas Van Lines Company and their agent, Warner, along with two others, and found somebody that was at least said in writing that they were willing to have everything out by August, I believe it was, 27th of 2004. Instead of that happening, a van appeared, loaded half their furniture, and then left, never came back. Their house deal fell through on the 27th at the closing because they could not deliver an empty property. And for approximately nine months after that, they paid double mortgages, double property taxes, of course, the sewerage and the gas, oil, electric, as well as had to invade their IRA accounts in order to make the payments on the New York property. Mr. West, we pretty much know that part of it. I know, Your Honor. And I know you're just trying to get started here, but more specific, and try to build up a little sympathy, but we read the record. More specifically, and I know Judge Jones had some difficulty with this issue because he came down on both sides. Correct. As you stand here today, does the Carmack Amendment apply or not apply? I believe the Carmack Amendment applies. As it came out, there's a good argument that it has to be looked at. Right. The only reason it applies is because they came, they picked up half the furniture, they had what they called a bill of lading, which the Carmack Amendment applies to. If they hadn't done that, this would be a straight contract action, and a suit based on the letter from their agent saying we will pick it up on August 28th and have an empty house there. So we have the Carmack Amendment. Yeah. They sealed the deal, and they got their $11,000 fee because they showed up and began moving things and took half of Lewis's furniture. It actually did move the furniture. They moved it to New York. They just were a little late. They moved half of it, I think, to North Carolina first, then they brought it back, picked up the other half and went on to New York where they collected an $11,000 fee from the Lewis's. But the Lewis's wound up without their house being sold based on their promise. I do submit this, though, that if the Carmack Amendment does apply, it certainly doesn't require any exact amount to be set forth in the claim that was ultimately filed. How about some amount, Mr. West, some amount? I don't think even some amount. Well, then what's left of the Carmack Amendment? Because it's pretty specific in saying that there ought to be an amount or discernible. I don't know if I can get the language out and read it to you, but I don't know what it is. Specifying a determinable amount. I mean, if it's, as you're asserting, you know, it's a generalized statement, I'm damaged, then what is left of the amendment? Very respectfully, Your Honor, that is not the Carmack Amendment. The Carmack Amendment It's the regulation, though. Your Honor? It's the regulation. It's the regulation. That's correct. What, are you saying the regulation doesn't apply? No. Yes, I'm saying that the regulation does not require a specific amount. I'd just like to go through it for a second. 49,14,706, an awful high number in the United States Code, is the Carmack Amendment. And basically what it is is to eliminate small print and bills of lading. It says that a carrier cannot have a period of time to file a claim shorter than nine months, nor a period of time to file a suit shorter than two years. Regulations were passed pursuant to that in 1972 by the Interstate Commerce Commission, and those regulations require, as part of it, that there be, as part of a claim, that there be the payment of a specific or determinable amount of money claimed. A determinable amount of money. I went back, and in the reply brief, went back to what's called the ICC recorder. And at page nine of the reply brief, when they passed that regulation, here's what they said about it. The actual amount of the claim is not essential immediately to enable a carrier to institute its investigation. And while it should ordinarily be included in the claim, inclusion of the amount claimed is directory and not absolute. They made a very, very clear statement in 1972 when they passed this, that this is directory language. Now, the trucking industry and the transportation industry have fought violently against people like the Lewis's, and very few people like the Lewis's will stand up and spend the money to bring a case here to say, the Carmack Amendment says there has to be an absolute claim for an amount of money, and you didn't make it. In this case, it's particularly appealing to say that this is a fallacious argument, because they couldn't make it. They couldn't figure out how much it was going to cost, how much they were going to take out of their retirement plan, how much their homes were going to sell for a year after this occurred, how much the electric bill was going to be, and the water bill, and the electric bill. It was indeterminable. Was it actually, let me take that in two parts. When you say it was not determinable, as a matter of fact, isn't it the case that they had a contract on the house prior to the expiration of the nine-month window? Yes, they did. So, they could have, at some point prior to that expiration, have sent the follow-up letter saying, we got a contract, this is the amount, this is the difference, and we're going to... Sort of a rolling claim, that you keep rolling along until you get all the elements that we set. I say that's not what the regulation says. It says a valid claim doesn't have to have a specific amount. And so far as the legislative history, it has to give you something that, quote, determinable, can be determined. Well, this not only can be determined, it was determined, is determined. It just was determined several months after the defendants wanted it to be determined. Mr. Jordan's point is that it could be determined before the nine months expired. Many of those claims could have been determined the day of the sale because they could have... I think that they... But certainly all the numbers were determinable as of March 14th of 05. No, I don't think March 14th of 05 until the closing. The closing was July 3rd, I believe, of 05. Exactly nine months. June 3rd, but it was beyond nine months. Yeah, exactly nine months. That was the ninth month. If you count your months, that was exactly nine months. So theoretically... They signed the agreement at sale and knew the difference in that price from what their original price had been. And they had signed an agreement at sale before, too, and had fallen through. In fact, this was delayed. This closing was originally supposed to be two months before July 3rd. Didn't occur. Occurred on July 3rd. Hypothetically, the Lewises could have run out from the closing. It was around 4.30 in the afternoon, and tried to file their claim, maybe by service by mail, and would have made the nine-month deadline. I don't think that's what the Carmack Amendment and the regulations promulgated under it provides or requires, nor should they. Not when they had the contract, though.  I mean, they had a contract. It was before the June 3rd closing date. They knew what the contract price was. We didn't write the amendment. We didn't write the regulation. But the regulation says something about a time frame, and it says something about a determinable amount. If they knew the determinable amount within that time frame, why should the Lewises get a pass? It's only part of their claim. They would have had the difference between the value of their house the first purchaser would give them and what the second purchasers would give them. But they had mortgage payments that had to be made. They had closing costs that had to be incurred that might be different. They had gas, water, and electric that had to be paid all those months. If they give us all those numbers on March 14th, it would be a lot different case, and I don't think we'd be peppering you with as many questions. I agree 100%. There's a better way of doing it. The question here is, was this way adequate? In other words, did this meet the claim requirement that CFR sets forth? And I submit it does, and I submit it for one additional reason. I don't have your reply brief with me today. Could you give me a page reference? Sure. It's page nine of the reply brief. I just want to have the site. And it's citing 340 Interstate Commerce Commission reports at 554, 555. And that's hard to find because the Interstate Commerce Commission doesn't exist anymore, but the Interstate Commerce Commission reports are obviously still good law and do document the passage of the regulations enforcing the 1906 CARMAC Amendment. One other thing I want to point out. In 97, they wanted to make clear what these amendments meant and what the regulations meant. And they passed an amendment to the regulations that I think is relevant here in discerning legislative intent. And it's 49 CFR 370.4D, right under the CARMAC regulations. And it says, claims filed for uncertain amounts. That's pretty specific. That's going right to the heart. They left the word determinable out, uncertain amounts. Whenever a claim is presented against a proper carrier for an uncertain amount, such as $100 more or less, in quotes, the carrier against whom the claim was filed shall determine the condition of the baggage or shipment involved at the time of delivery, if it was delivered, and shall ascertain as nearly as possible the extent, if any, of the loss or damage for which it is responsible. When a claim for an uncertain amount is filed, the burden shifts to the defendants to investigate and to determine. That burden was never met here. You didn't give any amount. You didn't give any amount. It wasn't you. Your clients didn't give any amount. We explained what the amount was going to be. We explained that the amount would be determined with the sale of the house. The amount would be determined based on the number of mortgage payments that had to be made and based on what the utilities for the one house that didn't sell would be. And there was another thing. There had to be money from the IRA resulting in taxes and penalties being paid. There's $20,000 in taxes and penalties. You reserve five minutes for rebuttal. I'm sorry. I have one question for you. Yes, Your Honor. And I'll be asking this of your opponent as well. Speaking only for myself, certainly there's a sympathy factor on the facts you've laid out, and you got some trouble on the law, and I think that might explain why you had Judge Jones come down one way one time and another way another time. Absolutely. This is a dispute. I'm wondering, was there any effort to talk about resolving this short of bringing it all the way through appeal? Absolutely, through the Third Circuit's mediation program and talk all along relating to it. This is an industry problem. The industry wants to dig this in. This has got to be the rule for them. So there was an attempt through the Third Circuit mediation program? Yes, there were. All right. Several. We'll have you back on rebuttal, Mr. West. Thank you. Mr. Wesko. Good afternoon. May it please the Court, my name is Jim Wesko. I'm here for the FLE Atlas Van Lines. I think it's important to note as an initial matter that the Carmack Amendment and the rules promulgated regarding the investigation and voluntary disposition of claims don't just apply to household goods carriers. They apply across the gamut to any type of interstate motor carrier. So the type of relief requested by the shipper, the appellant in this case, if considered by the Court and if granted by the Court, would undermine over 100 years of legislation and jurisprudence regarding timely notice and the resolution of claims. It's pretty important for you folks to make the point this is bigger than the Lewis's, right?  Your client shows up late, they lose their house's sale date, they have to carry two mortgages for an extended period, your guy's pocket $11,000 walk away and say tough Carmack Amendment. So I guess I can understand why you'd start with that, but should it play in our thinking at all when we ask the question of substantial compliance that these people got pretty clearly the short end of the stick? Well, with respect to substantial compliance, I think Judge Jones got it exactly right when he said it's not a strict compliance versus substantial compliance analysis here. When you have a situation when there's no amount whatsoever provided to the carrier, it's not that type of analysis. And I think the S&H case applied that as well. I'd like to address, Your Honor, the statement about the Lewis's and the treatment. This is not a situation where the Lewis's didn't have recourse. They were represented by counsel through the entire process. The first letter upon which the appellants based their claim that this was sufficient, determinable notice was drafted by an attorney. There were letters back and forth between Atlas and this attorney. So Atlas was clearly on notice. They knew that the Lewis's had lost the sale. They knew there was a problem. And so it's no mystery to them that the Lewis's had lost and were going to lose a substantial sum of money because of an undisputed set of facts here, which is Atlas just failed to show up and do what it contracted to do, right? Well, there are a few questions there. Let me address first of all the fact that the mere happening that the carrier has actual notice of the existence of a claim or a loss is immaterial to the claim filing analysis. That was addressed by this court in the S&H case. So that's immaterial. There are cases all over the place that state clearly that and this is litigated frequently with commercial carriers and shippers where the commercial carrier will have a surveyor or an inspector assigned to investigate a loss that's filed by a shipper. The shipper still has to comply with 370 and file the claim in a timely manner and in a specific manner in any determinable manner. So the fact that Atlas knew that there was a problem doesn't absolve the shippers and the appellants from still filing a proper claim under 370. They, of course, take the position that it was a proper claim because they told you everything they could tell you based on the information they had at the time and therefore you at that point had a responsibility to look into it and that you got all the notice that they could reasonably give and more than enough notice for you to be understanding that there was a problem that had to be addressed. So the Carmack Amendment was satisfied. What's the response to their assertion including the citation that Mr. West gave you at the end to the succeeding section saying a sum of uncertain amounts? I'm very glad you asked that question. I was going to bring it up. A 370.3D is the citation that Mr. West referred the court to and he neglected to mention I think perhaps the most important sentence of the entire provision. Right after Mr. West finished reading, the next sentence says with respect to the carrier, it shall not, however, voluntarily pay a claim under such circumstances unless and until a formal claim in writing for a specified or determinable amount of money shall have been filed in accordance with the provisions of paragraph B of this section. And paragraph B of this section again goes back and imposes an affirmative duty on the shipper to file a specific and determinable claim. Doesn't that take you back to page 9 of the reply brief about what's determinable? Yes, it does. Let me ask you this question here. The second closing, the closing on the home, occurred on June 3rd, which was the end of the nine months. I don't know what time the closing was. For purposes of my question, it doesn't really make any difference. Assume it was the end of the day. On June 5th or 6th, you get notice of what the specific damages were. Seems to me you'd be here arguing that that was late, too, because it wasn't filed within nine months. The Second Circuit has ruled exactly that way in the Pathway Bellows case. It was one day late and a $40,000 claim was denied. So, yes, I would be here arguing the same thing. Okay. But isn't there some good cause? Isn't there a good cause exception? Doesn't the Lewis's argue a good cause exception? And certainly doesn't this fall within the good cause exception? I mean, this whole matter wouldn't have occurred if your clients had gotten to the home, stayed there, and shipped the furniture as they agreed to. Who's to say that they were able to get the agreement of sale within the nine months? It was merely fortuitous that they got that. There is a reasonable diligence standard and a possibility standard. Okay. It's a good cause. I mean, how is this not reasonably diligent? Because the shippers, the plaintiffs in this case, clearly could have provided us with a detrimental amount. The entire process. When? If you look at the letter cited by the shippers upon which they based – the letter cites a litany of items that clearly are determinable at that time. All right. You were on notice at that time. You could have determined that information. Could you not have? Well, it's a duty analysis, then, I would suggest, Your Honor. The statute clearly states that the duty is on the shipper. And again, we're talking in the context not just of household goods carriers, but in the entire commercial context as well, that what you're asking or what you're suggesting is to shift the burdens that's contrary to the statute and the clear intent of Congress and the clear findings of decades of jurisprudence. Do you really believe that Congress intended for people like the Lewises to be left tens of thousands of dollars in debt because your client didn't want to show up when they were supposed to show up? I mean, it's an intriguing argument to say the intent of Congress here with the Carmack Amendment was to cut consumers off. I understand you're reaching back and saying this hits commercial shippers, too. That's a sound point. We're thinking about that. What would the ramifications be of a decision? But you can't honestly be telling us that you think Congress intended for people like the Lewises to be shut out totally because of Atlas Van Lines or people like them who say, I'll be there, I'll take your stuff away, and then they don't show up. That's exactly why Congress, when they promulgated Section 370 of Code 49, included an entire section that the household goods motor carriers must give to shippers when they're moving. It outlines their rights and responsibilities as shippers. It tells them clearly in plain English, not somewhere in the statute, it says in clear English, here are your rights, here are your responsibilities. In the event of a claim, you must do the following things. What would happen if Judge Fisher said, excuse me, if Judge Fisher's hypothetical, it's fortuitous for Atlas that they got the contract within the nine months. What if they'd gotten the contract to sell the house on June 6th? Then they'd make an impossibility argument, and we're arguing something different here today. But we're not arguing that today. Plaintiffs have not asserted that this was impossible for them to have ascertained during the nine-month period. Actually, I hear them arguing exactly something like that, saying we couldn't determine it any better than we did because there really wasn't information until the thing had closed, and it was subject to not closing for the, heaven forbid, the same sort of professional negligence that we suffered at the hands of Atlas. I think what we're talking about here is what is determinable and what is not. The shippers clearly have an idea as to what they think is determinable. They think that something that can be determined at some point in time in the future is, in essence, determinable. The statute does not have any type of temporal requirement in there that says any time in the future or at some point in the future it says specific or determinable right then and there. If there was some sort of a qualification, surely Congress would have put it in there or in their notes or their comments about the promulgation of the rule included that. I think it's instructive. What's the harm to your clients here? Pardon me? What's the harm to your clients here? I know there's no prejudice requirement, but what's the harm to your clients? You got a letter on October 26th of 2004. They outlined what the elements of potential damages were. You had an opportunity to investigate whether or not this agent of yours, Warner, had or had not made a commitment to ship on a specific day. You could do your investigation. All you had to do was wait for the numbers. What's the issue here? Nobody missed the statute of limitations. What you're asking us to find here is that Congress expressly preempted all statute of limitations on contractual cases between shippers and carriers. The statute is a condition precedent for the filing of a lawsuit. That is well-established jurisprudence. The statute, it's the regulation. The regulation, I'm sorry, is a condition precedent for the filing of a lawsuit. The bill of lading is the contract of carriage which controls the transaction. You didn't deliver the bill of lading until after you actually picked up the furniture. Section 375.505 does not require the bill of lading to be delivered until the truck leaves the premises where the residence is being loaded. The shipper signed it at destination. So we're completely compliant with all the regulations. Is that a head-two-wind-tails-you-lose argument, that we don't have to give you the bill of lading, but you still have a condition precedent that you have to meet of complying with all the requisites of giving us a specific sum of money, et cetera, but we don't have to actually give you the bill of lading until later if we don't want. It's not an argument I'm able to follow very easily. When the shipper contracts with the carrier, when they hire the carrier to conduct the transaction and to move the household goods, they're provided pursuant to statute a list of rights and responsibilities pursuant to Part 370 that outline all of the requirements and explain the documents, what they are, what they entail. Household good carriers are the exception among other types of motor carriers where they're required to publish a tariff that's posted online. The shippers have access to and they can request. All of this information is included clearly in the tariff. Is that in the record? Yes, it is. Yes, it is. The bill of lading clearly incorporates the tariff. The bill of lading does. Is the rest of those items in the record? Yes, it is. Other than by reference in the bill of lading. Yes. The bill of lading says that it must be filed in writing within nine months. I don't recall seeing anything in the bill of lading about specifying the amount that is required by the regulation. The bill of lading incorporates the tariff. It incorporates it. But does it say in here, in the bill of lading, whatever you, you know, the notes you give us in nine months must have a specified or determinable amount of money? The tariff clearly states. The tariff is the bill of lading which the shipper got. No, the bill of lading does not. The bill of lading incorporates the tariff. The tariff has a word-for-word, line-for-line recitation of 370. So what you're saying is the homeowner, who is a shipper here, has to look at the regulations implementing the Carmack Amendment to know what they should put in their letter. Yes. The shipper has presumptive knowledge of the contract of carriage that is well-established jurisprudence. That's exactly what I'm saying. And that's not very well-established in this circuit, is it? It's not been litigated in this circuit, but the other circuits have clearly stated that. There's no Third Circuit precedent that says what you're saying. I would agree with that, yes. All right. Now, when the letter that the lawyer sent, and I guess I have to sympathize a little bit with a family lawyer in a small firm who might not have at his fingertips the regulations for the Carmack Amendment, but it does say loss of profit on the sale of residence, additional mortgage payments they have had to pay on two mortgages, and miscellaneous expenses. Is it possible that the loss of profit is a determinable amount and would therefore meet the regulation? It's possible it could be determinable if it were provided, in fact, to the carrier. I think that's what's important. Now, what I'm suggesting is that just by telling them the item of damage, that they then know enough to know that it's a determinable amount, and he could have put in there approximately $100,000 and it would satisfy the other cases, but estimated $100,000, but why isn't it enough to just give the categories of damages and why do you need an exact amount? Because the regulations call for it. Notice is the lubrication of the engine of commerce in this country. I mean, you need notice. If you had put in the bill of lading that requirement, I might feel differently. I understand that. I appreciate that. The homeowner would have knowledge of it. Mr. Wesko, your opponent argues that the Carmack Amendment was actually designed to protect consumers. Do you agree that that's the intent behind the legislation? No. I think the Carmack Amendment was promoted to protect carriers. No, I think it was meant to affect the smooth flow of commerce and to manage claims arising in disputes in commerce. And I think that the Congress, understanding the problems experienced by some shippers with respect to household good carriers, for example, not in particular, promulgated Section 375 with the duties and rights to know your responsibilities when you move as a household good shipper. Was there any effort to settle this dispute, Mr. Wesko? Yes, there were. There were repeated letters back and forth between counsel originally hired to represent the Lewis's and corporate counsel for Atlas Van Lines where we exchanged our positions and we explained to them our positions and it was not resolved. And we tried to, again, through the Third Circuit mediation program, we tried to resolve it. But this ultimately is a threshold issue. Both sides would like to see a presidential opinion from the Third Circuit on this issue. As a household goods carrier, Atlas Van Lines is particularly concerned with the scope and ramifications of an adverse ruling in this case because it would go beyond household goods. It is an incentive for settlement. One would think. One would think that. It seems to me you would have been better off with Judge Jones' first proposed disposition. From a settlement perspective, perhaps, yes, I would agree with that. But Atlas, as you can see, the ramifications of an adverse ruling in this respect and in the general carrier-shipper universe as a whole, it would throw the notice scale completely out of kilter and it would shred the requirements for determinability. And just, I know I'm out of time, but I wanted to just perhaps refer to the court. There were other courts that specifically looked at the definition of determinable. And I'd like just briefly to read the two definitions that I parsed through my review of the cases. Aren't they in your briefs? They are not. The issue was brought up in the reply brief, so I beg the court's forgiveness in just allowing it to put on the record now. Why don't you give us your two citations? Okay. The two citations are Bobst v. IML-Brate at 566 F. Supp., and that's at 665, or 669. It's a Southern District of New York 1983 case. And the second one is Malloy v. Allied Van Lines at 267 F. Supp. 2nd, 1246. It's a Middle District of Florida case, and the site I'm referring to, or the definition I'm referring to, is at page 1257. Okay. Thank you, Mr. Weske. Thank you very much. Just one real quick. Excuse me. I assume that there is no basis in the statute or the regulations to distinguish between consumers and commercial shippers. Those contentions were raised at the trial court level, and there are absolutely none. Okay. Thanks. Thank you. Mr. West. Thank you, Your Honors. I'll try to be brief. Louis's don't want to lubricate commerce, nor do they want to shred Atlas Van Lines in any way, shape, or form. And they wanted to be treated fairly. They wanted to move, and they wanted to retire. And this is a case where the Carmack Amendment is being used as a sword when it was passed as a shield. If you look at the small print, the question is a shield for whom? Well, it's being used as a shield for the motor carrier industry. They're saying that this comes out and affirmatively stops people from suing us. That's not what it was all about. It was because the small print on the bill of lading, and this is the actual bill of lading in this case, 87A. The small print on the bill of lading, it was saying things like you've got to sue us within two days, and you've got to sue us in San Diego. And Congress passed the Carmack Amendment, which says no claim can be in a shorter period of time than nine months, and no limitations can be put in a contract shorter than two years. It was to make sure that you had nine months to file a claim, not what kind of claim, but a claim, and you had two years to file a lawsuit. Now, to give you an example, I can see where some industries, and I don't want to, this isn't really my point, but if you put a Ming vase on a train in Harrisburg and sent it to Sacramento, and it arrived with Ming chips instead of a Ming vase, and it went through five or six carriers, there has to be a way to figure out how that happened. And sure, you have the Carmack Amendment. There's got to be a claim. There's got to be a fair amount. That's not what this was. Everybody knew what this was right from the beginning. They were calling from the closing, the first closing, saying, you guys aren't here. They're walking out. They're leaving us. Get a truck over there to keep your word. Everybody knew exactly what was happening here. It wasn't some hidden shipment that disappeared, and we're not going to tell you how much it was worth. Everybody knew, and everybody could figure out. Carmack itself is a consumer protection issue. The questions about the regulations being divided in two, the regulations do seem to have been divided in two and not changed a whole lot when they were divided in two, one commercial and one for people shipping household goods, except that they called the regulations in 375, I believe of 49 United States Code, the Consumer Protection Regulations for Household Shippers, and they did change the title. And I think Carmack in the beginning is consumer protection. It's still meant to be consumer protection, and when you come right down to it, that last sentence in 370.4D, the amendment I cited in 1997, really supports the position. There's no reason for that sentence unless that amended claim, setting forth the amount, can be filed more than nine months after the original claim. It is saying a claim is a claim is a claim, even if it says $100 more or less, just so when you settle it, you get a dollar amount. That's a very simple proposition, and it has been changed into a very complex proposition that has caused a lot of the circuits to go into a lot of gymnastics on this, but I suggest when you analyze it and when you read the cases, everybody except the First and Second Circuit, and I don't know why they're there, adopts the substantial performance test. The Fourth, the Sixth, the Ninth, the Eleventh, and Judge Rosen, in this circuit's case, albeit over to Dicta, S&H Hardware versus Yellow Transport, clearly said it's a substantial performance test. This has been overwhelming performance, not substantial performance. It's overwhelming performance by the Lewises, and they're entitled to their day in court. Thank you. Thank you, Mr. West. And we thank both counsel for excellent arguments, and we will take the matter under advisement. Thank you.